UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

DEWI ATHARY KONING,

    Plaintiff,

v.

THE ARC OF ST. LUCIE COUNTY, INC.,
a non-profit corporation,

    Defendant.
_____/

**COMPLAINT**

COMES NOW, the Plaintiff, DEWI ATHARY KONING, (hereinafter referred to as "Koning" or "Plaintiff"), by and through her undersigned attorney, and hereby files this lawsuit against Defendant, THE ARC OF ST. LUCIE COUNTY, INC., (hereinafter referred to as "Arc" or "Defendant" and as grounds therefore alleges as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action for relief pursuant to 42 U.S.C. §1981, §1981(a), et seq. for racial discrimination and retaliation from her former employer.

2. At all times material hereto Plaintiff Koning was a resident of St. Lucie County, Florida.

3. Defendant Arc has a principal place of business at 500 South US Highway 1, Suite 101, Ft. Pierce, FL 34950.

4. At all times material hereto, Plaintiff was employed with Defendant at its location at 500 South US Highway 1, Suite 101, Ft. Pierce, FL 34950.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under § 1981.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including certain of the unlawful employment practices alleged herein, occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission on February 16, 2022. A true and correct copy of this Charge of Discrimination is attached as Exhibit 1 to this Complaint.

8. On October 5, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff. A true and correct copy of this Right to Sue is attached as Exhibit 2 to this Complaint.

9. Plaintiff has exhausted all administrative remedies prior to filing this Complaint.

## COMMON ALLEGATIONS

10. Plaintiff is a Black female.

11. Plaintiff began working for Defendant on or about October 5, 2020, up to and including her termination on January 24, 2022.

12. Defendant hired Plaintiff as its Executive Director as the position is defined in Defendant's bylaws. (A true and correct copy of Defendant's bylaws are included as Exhibit 3 to this Complaint).

13. At the time of her hiring, Plaintiff was the first Black woman hired by Defendant into its Executive Director role.

14. Despite advertising the position at $70,000, Defendant offered Plaintiff a salary of $65,000, which was less than any past, similarly situated Executive Director earned.

15. Plaintiff accepted this lowered salary to assist the organization.

16. After six months, and as evidence of her abilities and skills in the role, Defendant increased Plaintiff's salary to $80,000.

17. As the Executive Director, Plaintiff would:

    a. Be directly responsible for carrying out all policies and decisions made by the Board of Directors or Executive Committee.

    b. Assume full authority and accountability for the efficient and ongoing success of the organization, and as such, report to the Board of Directors/Executive Committee.

    c. Render a financial report to the Board of Directors at each meeting of the Board of Directors; make recommendations regarding the annual budget, capital budget, pricing for services, fundraising, contracts and grants, and employee benefits.

    d. Be authorized to enter into contracts or execute and deliver instruments in the name of and on behalf of the Corporation, which do not bind or obligate the Corporation for more than $25,000 unless approved by the Board of Directors.

    e. Be authorized to sign checks, drafts, or orders of payment of money in satisfaction of indebtedness by the Corporation within the monetary limits specified by the Board of Directors. Checks, drafts, or orders of payment of money in satisfaction of indebtedness exceeding this amount requires the countersignature of a member of the Executive Committee.

*See* Ex. 3.

18. On or around October 10, 2021, Kelly Lang, a member of Defendant's Board of Directors sent Plaintiff a letter, copying all other members of the Board. (A True and Correct Copy of this Letter attached as Exhibit 4)

19. The letter followed a meeting wherein Lang and Plaintiff discussed issues with Lang's son, who attended Defendant's children's program.

20. Lang did not agree with her son receiving similar treatment to other students at the Arc, and she raised those concerns to Plaintiff in the letter.

21. The letter went on to describe what Lang herself called a "laundry list of complaints" about Plaintiff's work as Executive Director.

22. The letter was filled with multiple inaccuracies and attacks upon Plaintiff as a person that were not based in fact.

23. Plaintiff contends that racial animus was a driving force behind this letter.

24. The letter was not accurate. Plaintiff's work as Executive Director speaks for itself as she has accomplished the following:

   a. Obtained $330,000 PPP loan to keep programs open.

   b. Revived two fundraisers absent for years and brought in net income of $30,000 per event more than previous years.

   c. Created a grass roots individual donor program, resulting in new donor dollars from Dyer, Chevrolet, Walmart, and Wawa among others. This brought in $75,000 new dollars.

   d. Brought back health benefits at affordable rates for staff of 67 people.

      e.      Relocated the children's program to a modern campus and increased funding for that program by 11% to offset the cost.

      f.      Identified new grant and major funders bringing in additional $60,000.

      g.      Gave two rounds of raises to staff as well as two bonus payments. Staff was at $9.50 per hour for several years and at Plaintiff's termination, they were at $12-$13 per hour.

      h.      At the time of her termination, the following improvements were in progress, which Defendant knew of:

            i.      $200,000 for third employee wage increase by July 2022.

            ii.      Meeting with private foundation after five-month rapport building. Possible result of funding for five plus years at $25,000-$50,000 per year.

            iii.      Private donor $70,000 for remodeling of adult center building.

            iv.      Pending sale of administrative building at $1.5 million, setting the organization up for sustainability of all programs in the future.

            v.      Renegotiated health benefit package for March 2022 at $23,000 cost savings to The Arc.

            vi.      Received multiyear grant from FDOT $32,800 per year.

25. Following that letter, at a Board meeting on October 19, 2021, Defendant's Board of Directors, led by Board President J. Curtis Boyd, allowed Lang to verbally share unsubstantiated accusations about Plaintiff and her character.

26. Lang accused Plaintiff of being contentious, rude, and disrespectful, among other things, in a thirty-minute-plus diatribe against Plaintiff personally.

27. Plaintiff contends that these actions by Lang and the Board were also driven by racial animus against her.

28. Plaintiff has a disease called Functional Neurological or Conversion Disorder, which results in her body manifesting stroke-like symptoms when she is exposed to extreme stressors.

29. While driving home after the Board meeting on October 19, 2021, Plaintiff's disease flared. By the following morning, Plaintiff had numbness, shooting pain in her extremities, her gait was affected based on the muscles in her right leg not functioning, and the vision in her right eye was blurry.

30. Following the false accusations, three members of the management team for the Arc sent a letter to the Board in support of Plaintiff and her work. (See letter attached as Exhibit 5).

31. The Management letter highlighted the networking connections Plaintiff had made in the community with donors, the grants that she earned on behalf of the Arc, and her relationship with staff.

32. On October 21, 2021, Plaintiff emailed Patricia Burgess, who was the HR Ombudsman for Defendant's Board to document these actions and how her disease flared up in response. (Email as Exhibit 6)

33. Plaintiff and Burgess met on November 4, 2021, to discuss this issue to no avail.

34. On November 10, 2021, Plaintiff followed up after no action had been taken. (Email as Composite Exhibit 7)

35. On November 12, 2021, Board President Boyd reassured Plaintiff that "the issues you have raised will be addressed." (Email as Composite Exhibit 7)

36. On November 19, 2021, there was still no action taken, so Plaintiff asked for the specific process to file a grievance against a Board member. (Composite Exhibit 7)

37. On November 21, 2021, Board President Boyd informed Plaintiff that there was no grievance procedure; however, the Board would have an independent investigation opened into the issue. (Composite Exhibit 7)

38. On November 22, 2021, Plaintiff contacted Ricky Bouchard, the vice president of the Arc's insurance carrier. Bouchard informed Plaintiff that she would need to obtain an attorney and sue the organization to make a claim under the Arc's liability insurance. (Composite Exhibit 7)

39. Plaintiff's goal was not to sue the organization and take away from the funding she secured as Executive Director. Instead, Plaintiff's request was for Defendant to make a claim under its Directors & Officers Liability Policy based on the actions of Lang.

40. Based on that, Plaintiff obtained counsel, who sent a letter of representation to the Board on December 30, 2021. (Attached as Exhibit 8).

41. The letter requested Boyd make a claim under the Arc's insurance policy based on the actions of Lang, and that the Board remove Lang.

42. In response to that letter, Defendant terminated Plaintiff on January 24, 2022.

43. Following Plaintiff's termination, Defendant promoted Tara Goheen to interim Executive Director.

44. Goheen, in turn, attempted to hire Plaintiff back on January 31, 2022.

45. Goheen made this decision to ensure Defendant did not lose key donors, who were threatening to remove funding, or miss important deadlines for financial grants.

46. Goheen also attempted to relieve the Board members of their duties on the belief that she had that power as Executive Director.

47. On or around February 2, 2022, three members of Defendant's Board, along with a locksmith and member of the Ft. Pierce Police Department, arrived outside Defendant's office.

48. Those individuals falsely claimed to have an injunction against Plaintiff and Goheen and demanded that they leave the building.

49. The aforementioned action was prompted by Lang as a member of Defendant's Board. Lang was present, spending nearly five hours outside of Plaintiff's office in an attempt to have law enforcement forcible remove Plaintiff.

50. During this incident, Lang referred to Plaintiff loudly in the presence of others as, "some Black girl with braids."

51. Lang's comment made clear the true racial animus underlying the actions of Lang as a member of the Board, as well as the Board's true racial animus towards Plaintiff for her actions as Executive Director to protect her rights.

52. Plaintiff and Goheen attempted to call 9-1-1 because they felt in fear for their safety; however, the dispatch refused to send officers for them.

53. Later, three additional officers arrived on scene at the request of Defendant to remove Plaintiff and Goheen from the premises.

54. Plaintiff and Goheen asked for a copy of the injunction that the officers and members of Defendant's Board claimed to have against them, but they were never shown a copy of an injunction because one did not exist.

55. Instead, the members of law enforcement present responded to the questions posed by Plaintiff and Goheen by placing their hands on their guns in a threatening manner.

56. On February 4, 2022, Plaintiff was served with a complaint and motion for temporary injunction that Defendant filed in state court on February 2, 2022. [Case No. 5620222CA000190AXXXHC, attach as Exhibit 9].

57. Defendant initially unilaterally set a hearing on its motion for temporary injunction on February 10, 2022; however, Defendant cancelled that hearing after counsel appeared on behalf of Plaintiff and moved for the court to reschedule the hearing based on deficiencies in notice and service.

58. On February 23, 2022, Defendant sought leave to amend their complaint, which the court granted on April 1, 2022.

59. Plaintiff filed a motion to dismiss the amended complaint on April 21, 2022, which the court denied on June 5, 2022. The case is still pending, with no action taken Defendant (who is plaintiff in that matter) since June 29, 2022.

60. Plaintiff contends each and all of the actions above were discriminatory based on her race and skin color.

61. Plaintiff contends each and all of the actions above were taken in retaliation for her attempt to assert her protected rights.

## COUNT I – DISCRIMINATION
## IN VIOLATION OF 42 U.S.C 1981,1981(A)

Plaintiff alleges and incorporates the preceding paragraphs as if fully set forth herein.

62. Defendant engaged in racially discriminatory conduct towards Plaintiff such that she was deprived of her civil rights.

63. Defendant is an employer within the meaning of 42 U.S.C. §1981.

64. Plaintiff is a Black female, subject to the protections of 42 U.S.C. §1981.

65. Plaintiff was subject to adverse employment treatment including false, defamatory, and racially charged accusations being shared in writing and verbally by a member of Defendant's Board.

66. Plaintiff was subject to adverse employment treatment in her starting salary being lower than past Executive Directors.

67. Plaintiff was also subject to adverse employment treatment through her termination.

68. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by allowing Plaintiff to continue to be subjected to disparate treatment and discrimination in violation of 42 U.S.C. §§1981,1981(a).

69. Plaintiff contends that Defendant has a policy and pattern and practice of treating similarly situated, non-Black employees more favorably than Black employees.

51. Defendant failed to acknowledge the discriminatory treatment of Plaintiff.

52. Defendant knew or should have known that Plaintiff was being discriminated against and being treated in a manner disparate and less favorable than other similarly situated non-Black employees by the Defendant's agents, employees and/or representatives.

53. Despite said knowledge, Defendant failed to take any remedial action.

54. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by permitting Plaintiff to be subjected to continuing disparate treatment on the basis of race in violation of 42 U.S.C. §1981.

55. Plaintiff alleges on information and belief that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet

fully known. When the discriminatory practices become known, Plaintiff will seek leave of the Court to amend the Complaint in this regard.

56. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

57. As a result of Defendant's conduct, Plaintiff suffered general and compensatory damages.

58. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee.

59. Plaintiff requests that she be awarded damages, including general, compensatory, and punitive damages and reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§1981, 1981(a).

WHEREFORE, Plaintiff prays that judgment be entered in her favor against Defendant as follows: That Plaintiff be awarded general and compensatory damages, punitive damages, reinstatement, or front pay, back pay, that Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. §§1981, 1981(a); and that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT II
## 42 U.S.C. 1981, 1981(a) & §1983
## RETALIATION

Plaintiff alleges and incorporates the preceding paragraphs as if fully set forth herein.

60. Defendant engaged in retaliatory behavior toward the Plaintiff such that she was deprived of her civil rights.

61. Defendant is an employer within the meaning of 42 U.S.C. §1981 and §1983.

62. Plaintiff is a Black female, subject to the protections of 42 U.S.C. §1981 and §1983.

63. Plaintiff engaged in protected activity when she complained about discriminatory comments and disparate treatment.

64. Plaintiff also engaged in protected activity when she retained the services of an attorney to pursue her claims against Defendant.

65. Plaintiff has been subjected to a pattern of retaliation, including termination.

66. Plaintiff contends that her termination and other treatment are in retaliation for her protected activity.

67. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful retaliation by allowing Plaintiff to continue to be subjected to retaliation in violation of 42 U.S.C. §§1981, 1981(a) and §1983.

68. Defendant knew or should have known that Plaintiff was being retaliated against in violation of 42 U.S.C. §§1981, 1981(a) and §1983.

69. Despite said knowledge, Defendant failed to take any remedial action.

70. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful retaliation by permitting Plaintiff to be subjected to continuing retaliation in violation of 42 U.S.C. §1981 and §1983.

71. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

72. As a result of Defendant's conduct, Plaintiff has suffered general and compensatory damages.

73. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel.

74. Plaintiff requests that he be awarded reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§1981, 1981(a) and §1983.

WHEREFORE, Plaintiff prays that judgment be entered in her favor against Defendant as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. §§1981, 1981(a); and §1983; and that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT III – DISCRIMINATION
## IN VIOLATION OF TITLE VII, 42 U.S.C. §2000e

Plaintiff alleges and incorporates the preceding paragraphs as if fully set forth herein.

75. Plaintiff contends that she has been discriminated against on the basis of her race and/or national origin.

76. Plaintiff is a Black woman.

77. Defendant is an employer as defined in the Title VII.

78. Defendant employs fifteen (15) or more employees for each working day as part of its daily operation.

79. Plaintiff contends that the Defendant has a policy, pattern, and practice of allowing harassing, discriminatory treatment of Black employees and individual of color.

80. Plaintiff contends that Defendant failed to follow its policies preventing discrimination.

81. As a result of the disparate treatment and Defendant's failure to redress the environment, Plaintiff filed a Charge with the FCHR and the EEOC.

82. Defendant knew or should have known that Plaintiff was being discriminated against and being treated differently and more harshly than other similarly-situated employees by Defendant and its agents, employees and/or representatives.

83. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by permitting Plaintiff to be subjected to continuing discriminatory treatment on the basis of race in violation of the Title VII.

84. Plaintiff is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices which are not yet fully known.  At such time as the discriminatory practices become known, Plaintiff will seek leave of court to amend the Complaint in this regard.

85. Plaintiff suffered disparate treatment including but not limited to termination.

86. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

87. As a result of Defendant's conduct, Plaintiff has suffered general and compensatory damages.

88. Plaintiff has suffered damages including compensatory damages for wage loss, front pay, back pay, pain and suffering, humiliation, loss of opportunities and the like, as a result of the Defendant's conduct, by and through its agents, employees and/or representatives.

89. Plaintiff further seeks statutorily provided punitive damages for the Defendant's intentional and/or reckless disregard of Plaintiff's rights under the Title VII.

90. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel.

91. Plaintiff requests that she be awarded reasonable attorney's fees and costs of suit pursuant to Title VII.

92. Plaintiff has exhausted all administrative remedies prior to bringing this lawsuit.

93. Plaintiff suffered injury and seeks damages for his general damages, compensatory damages, punitive damages, and prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to the Title VII and, that Plaintiff be awarded such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff prays that judgment be entered in her favor against the Defendant as follows: That Plaintiff be awarded general damages, compensatory damages, punitive damages, and prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to the Title VII and, that Plaintiff be awarded such other relief as the Court deems just and proper

## COUNT VI – RETALIATION
## IN VIOLATION OF TITLE VII, 42 U.S.C. §2000e

Plaintiff alleges and incorporates the preceding paragraphs as if fully set forth herein.

94. Plaintiff engaged in protected activities in that she objected to his racially motivated treatment and complained about discrimination during his employment.

95. Plaintiff has been subjected to a pattern of retaliation.

96. Specifically, Plaintiff was subject to adverse employment treatment including, but not limited to, her termination.

97. Plaintiff contends that his termination and other treatment are in retaliation for his protected activity.

98. Plaintiff has exhausted all administrative remedies prior to bringing this lawsuit.

99. Plaintiff contends that his complaints were causally related to the disciplinary actions.

100. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful retaliation in violation Title VII.

101. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices against her which are not yet fully known.  At such time as such retaliatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

102. Plaintiff suffered damages as a result of Defendant's conduct, by and through its agents, employees, and/or representatives.

103. Plaintiff has suffered injuries including compensatory damages for wage loss, front pay, back pay, pain and suffering, humiliation, loss of opportunities and the like, as a result of the Defendant's conduct, by and through its agents, employees and/or representatives.

104. As a further and direct proximate result of the Defendant's violation of Title VII, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained.

105. Plaintiff also seeks punitive damages for the Defendant's conduct in reckless disregard of his rights.

106. As a further direct and proximate result of the Defendant's violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that his attorney's fees be awarded pursuant to Title VII.

WHEREFORE, Plaintiff prays that judgment be entered in her favor against the Defendant, as follows: That Plaintiff be awarded general and compensatory damages, prejudgment interest, punitive damages, and injunctive relief; that Plaintiff be awarded reasonable attorney's fees and costs of suit pursuant to the Title VII; and that Plaintiff be awarded such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all matters so triable.

Dated this 21st day of October 2022

SCOTT LAW TEAM, LLC
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

s/Gabriel T. Roberts
Gabriel T. Roberts, Esq.
Florida Bar No. 1018435
Primary e-mail: GRoberts@scottlawteam.com
Secondary e-mail: mail@scottlawteam.com
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottLawTeam.com